# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

| | | |
|---|---|---|
| **DARRELL HARDIE,** *et al.*, | * | |
| | * | |
| **Plaintiffs,** | | |
| **v.** | * | **Case No.: GJH-20-2627** |
| | * | |
| **CIT BANK,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Darrell and Yanic Hardie bring this civil action against Defendants CIT Bank and OWB REO, LLC, alleging illegal trespass and conversion (Count I); violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (Count II); unjust enrichment and constructive trust (Count III); slander of title (Count IV); quiet title (Count V); and various other claims (Count VI). ECF Nos. 1 & 9. Pending before the Court is Defendants' Motion to Dismiss. ECF No. 10. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion to Dismiss is granted.

1

## I.      BACKGROUND[1]

The facts in this action stem from a foreclosure proceeding that began on September 1, 2015, when an order to docket foreclosure was filed regarding a property located at 10809 Riverview Rd., Fort Washington, MD 20744. ECF No. 9 ¶ 10. Ratification of the foreclosure sale was entered on May 3, 2017. *Id.*

On the evening of May 30, 2017, Plaintiff Darrell Hardie was at the 10809 Riverview Road property waiting for his wife and minor son to come home when, around 9:30 pm, "he was alerted by the home security system that intruders were breaking into the property." *Id.* ¶¶ 12, 14. Plaintiffs allege that, on that "dark and rainy night," Defendants' "'real estate agent,'" Shea Farmer-Johnson, and eight "accomplices"—"six grown athletic men and two grown large women"—conducted a "tactical invasion" of his home, "vandaliz[ing] and criminally trespass[ing]" onto the property and "proceed[ing] to terrorize" Mr. Hardie. *Id.* ¶¶ 13–15, 18. According to the Amended Complaint, Mr. Hardie observed Ms. Farmer-Johnson and her accomplices through security cameras and saw them cut the wires to the security cameras and dismantle the screws and bolts securing the gate entry system at the property's entrance— roughly a quarter mile down a driveway from the house's front door—in order to enter the property. *Id.* ¶¶ 15–16, 18. The group next drove their vehicles up the driveway and tried to enter the house, "rattling the front door lever" and trying "every way possible to break into the home," including "shouting at [Mr. Hardie] to 'come out'" and threatening "grave and imminent physical harm" if he failed to comply. *Id.* ¶¶ 16–17, 20–21. Plaintiffs allege that two of the men "ran around back" while "another two tried to smash or pry the front door down with metal tools

---

[1] Unless stated otherwise, all facts are taken from Plaintiffs' Amended Complaint or documents attached to and relied upon in the Amended Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

including crowbars and sledgehammers." *Id.* ¶ 19. Others "tried to batter down the garage door." *Id.* ¶ 21.

Mr. Hardie called the police, but their arrival was delayed. *Id.* At some point, the individuals "regrouped in front of the house and appeared to be planning their next move" when police sirens began to wail in the distance, unrelated to Mr. Hardie's call. *Id.* The individuals retreated to their cars and left the property. *Id.* ¶¶ 22, 24. Mr. Hardie then went outside and drove to the property's front gate to wait for his wife and minor son, who were expected to return shortly. *Id.* ¶ 23. After they arrived, Mr. Hardie left them to wait for the police while he drove to another property he owned nearby, located at 11400 Riverview Road. *Id.* ¶ 36. According to the Amended Complaint, Mr. Hardie inspected the property and did not see any damage or intrusions. *Id.* ¶ 38.

Meanwhile, police en route to Plaintiffs' home encountered Ms. Farmer-Johnson and pulled her over, at which point she said she "'worked for CIT Bank'" and "'they authorized her to enter the property'" and also provided the officer "what appeared to be written instructions to break, enter and burglarize the real estate premises." *Id.* ¶¶ 24–25. Ms. Farmer-Johnson admitted to entering the property, although she said the front gate had already been open, and to "stalking" the property several times earlier. *Id.* ¶ 25–26. "Junior officers" released Ms. Farmer-Johnson without their supervisor's permission, *id.* ¶ 43, but when the officers arrived at 10809 Riverview Road and saw the damage, they "admitted their mistake" and instructed Mr. Hardie to photograph the damage and complete a crime report. *Id.* ¶ 27.

Mr. Hardie subsequently filed a complaint with the Prince George's County Police Internal Affairs Department and, on June 26, 2017, met with "Lt. Ruben" concerning the events of May 30, 2017. *Id.* ¶ 28. However, as Plaintiffs state in the Amended Complaint, "[h]ere is

3

where it gets confusing[.]" *Id.* ¶ 42 (emphasis in original). Plaintiffs allege that Mr. Hardie was

later arrested and charged with the felony committed by Ms. Farmer-Johnson and her

accomplices. *Id.* ¶ 31. During those criminal proceedings, Ms. Farmer-Johnson admitted "<u>on the</u>

<u>record</u> . . . <u>that she was trained as an Agent of the herein Defendants</u>, with <u>specific instructions</u> to

bully and frighten the Hardie's out of their family home, in order to 'make them leave and give

up' so the place could be seized and occupied, with the prize of stealing everything loose and

portable on the ground, to compensate her accomplices in her 'night squad[.]'" *Id.* ¶ 32

(emphasis in original). She further admitted to criminally trespassing the property "**upwards of**

**twenty times**" between February and May 2017. *Id.* ¶ 34 (emphasis in original). Mr. Hardie was

eventually acquitted. *Id.* ¶ 31.

According to the Amended Complaint, shortly after the events of May 30, 2017, Mr.

Hardie felt it was necessary to move his family out of the 10809 Riverview Road property and

into the 11400 Riverview Road property. *Id.* ¶ 45. Soon after, however, in August 2017, he

discovered that the 10809 Riverview Road property had been vandalized and ransacked. *Id.* All

of Plaintiffs' remaining personal property had been taken, and a printed sign had been placed on

a front window stating: "DO NOT ENTER, VIOLATORS WILL BE PROSECUTED.

CONTACT <u>SHEA FARMER-JOHNSON</u> FOR QUESTIONS ABOUT THIS PROPERTY." *Id.*

¶ 46.

On September 12, 2020, Plaintiffs filed suit against Defendant CIT Bank, the creditor on

whose behalf Ms. Farmer-Johnson and her associates were allegedly acting, and OWB REO,

LLC, who won possession of the 10809 Riverview Road property on December 8, 2017, *id.* ¶ 11.

ECF No. 1. Defendants filed a Motion to Dismiss on October 30, 2020. ECF No. 8. Plaintiffs

then amended their Complaint on November 4, 2020. ECF No. 9.[2] Defendants filed a second

Motion to Dismiss on November 18, 2020. ECF No. 10. Plaintiffs responded to the Motion to

Dismiss on December 2, 2020, ECF No. 12, and Defendants filed a reply on December 16, 2020,

ECF No. 14.[3]

## II.    STANDARD OF REVIEW

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in

a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317

(4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to

state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of

the factual allegations contained in the complaint,' and must 'draw all reasonable inferences

[from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir.

2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal

conclusions, elements of a cause of action, and bare assertions devoid of further factual

---

[2] Upon the filing of the Amended Complaint, Defendants' original Motion to Dismiss became moot and is denied on that basis.

[3] The Court notes that the 11400 Riverview Road property, where Plaintiffs moved after the events of May 30, 2017, was allegedly robbed on September 5, 2017, in circumstances similar to those alleged herein. *See Hardie v. Deutsche Bank Tr. Co. Am.*, No. TDC-20-1135, 2021 WL 2458061, at *2 (D. Md. June 16, 2021). According to Plaintiffs, after the 11400 Riverview Road property was sold in foreclosure proceedings, agents for the creditor stole more than $1.5 million in personal belongings. *Id.* On May 4, 2020, before filing the instant action, Plaintiffs filed suit in this District concerning the alleged theft at the 11400 Riverview Road property. *See id.* Plaintiffs raise many of the same claims in the two proceedings. Judge Chuang's recent decision regarding those claims thus provides relevant guidance in this case.

enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

Because the burden of establishing an affirmative defense rests on the defendant, "a motion to dismiss filed under [Rule] 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.*; *see also Wright v. United States Postal Serv.*, 305 F. Supp. 2d 562, 563 (D. Md. 2004) ("Statutes of limitations defenses are recognized as appropriate grounds for granting a motion to dismiss where the defense is apparent from the face of the complaint.").

## III. DISCUSSION

### A. State Law Claims

Plaintiffs bring state law claims for trespass and conversion (Count I), unjust enrichment and constructive trust (Count III), slander of title (Count IV), quiet title (Count V), libel (Count VI), and a demand to present the mortgage note (Count VI). As a preliminary matter, a federal court exercising diversity jurisdiction must determine which state's law applies by following the choice-of-law rules of the forum state. *Johnson-Howard v. AECOM Special Missions Servs.*,

*Inc.*, 434 F. Supp. 3d 359, 370–371 (D. Md. 2020). Under Maryland choice-of-law rules, tort claims are generally governed by the law of the state where the alleged harm occurred, *id.*, and "questions involving interests in land" are governed by the law of the state in which the property is located, *Day v. DB Capital Grp., LLC*, No. DKC 10–1658, 2011 WL 887554, at \*17 (D. Md. Mar. 11, 2011). Because all alleged "acts occurred in and affected real property" in Maryland, ECF No. 9 ¶ 9, Maryland law governs all state law claims.

### 1. Trespass and Conversion

In Count I, Plaintiffs first allege that Defendants unlawfully trespassed on his real property at 10809 Riverview Road. ECF No. 9 ¶ 49. Maryland law provides three years to file a claim for trespass. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *Litz v. Md. Dep't of Env't*, 76 A.3d 1076, 1086 (Md. 2013) ("Counts for . . . trespass . . . must be filed within three years from the date the action accrues."). Maryland courts apply the discovery rule when determining when an action accrued, meaning the limitations period begins when the "plaintiff knows or should have known of the injury giving rise to his or her claim." *Litz*, 76 A.3d at 1086. Plaintiffs were alerted "that intruders were breaking into the property" on May 30, 2017. ECF No. 9 ¶ 12. Plaintiffs filed this action on September 12, 2020, ECF No. 1, more than three years from the date the action accrued. Because Plaintiffs did not file suit within the three-year limitations period, their trespass claim will be dismissed.

Count I also includes a claim of conversion. Plaintiffs allege that Defendants "stole[]" and "destroyed" $500,000 worth of "furnishings, clothing, equipment, and vehicles," among other items. ECF No. 9 ¶ 48. Like trespass claims, conversion claims must be filed within three years of the date the action accrues under Maryland law. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see Peete-Bey v. Educ. Credit Mgmt. Corp.*, 131 F. Supp. 3d 422, 433 (D. Md. 2015).

Plaintiffs admit in their Amended Complaint that they learned "the entire property" had been "ransacked" in August 2017, ECF No. 9 ¶ 45, but Plaintiffs filed their action more than three years later, on September 12, 2020. Thus, the claim for conversion will likewise be dismissed.

### 2.  Unjust Enrichment and Constructive Trust

Plaintiff next brings an unjust enrichment claim in Count III, seemingly on the basis that Defendants stole $500,000 worth of personal property from his home and did not apply that value to the payment of Plaintiffs' mortgage debt. ECF No. 9 ¶¶ 68, 70. Unjust enrichment claims, too, are subject to a three-year statute of limitations in Maryland. *See Willox v. Ladas*, No. CCB–13–2096, 2014 WL 4662049, at *4 (D. Md. Sept. 18, 2014). Since Plaintiffs learned of the removal of the property in August 2017, their claims accrued on that date. Accordingly, as above, those claims are barred because they were filed more than three years later.

Count III also includes a constructive trust claim, requesting that the Court impose a constructive trust as an equitable remedy to convey the wrongly acquired property back to Plaintiffs. ECF No. 9 ¶ 72. In *Wimmer v. Wimmer*, the Maryland Court of Appeals explained that

> [a] constructive trust is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property. The remedy is applied by operation of law where property has been acquired by fraud, misrepresentation, or other improper method, or where circumstances render it inequitable for the party holding the title to retain it.

287 Md. 663, 668 (1980). The remedy's "purpose . . . is to prevent the unjust enrichment of the holder of the property." *Id.* Courts have applied three-year limitations periods to equitable claims for constructive trusts. *See, e.g.*, *GenSpera, Inc. v. Mhaka*, No. CIV.A. MJG-12-3302, 2014 WL 4658146, at *4 (D. Md. Sept. 12, 2014), *aff'd*, 609 F. App'x 655 (Fed. Cir. 2015). Because Plaintiffs became aware of the allegedly wrongful conversion of their house on September 15, 2015, when the foreclosure was docketed, or, at the very latest, May 3, 2017, when the sale was

ratified, and became aware of the alleged conversion of their personal property in August 2017, their request that the Court impose a constructive trust, brought more than three years after those discoveries, is barred.

### 3. Slander of Title

Plaintiffs bring a claim for slander of title, claiming Defendants caused "slander in public county records" by falsely "docket[ing] a foreclosure action" regarding the Plaintiffs' property despite "**[n]o Defendant in this action ever own[ing] any debt** related to either Plaintiff[.]" ECF No. 9 ¶ 74–7 (emphasis in original). Claims for slander of title must be filed within one year of the date on which the action accrues. Md. Code Ann., Cts. & Jud. Proc. § 5-105; *see also Bacon v. Arey*, 40 A.3d 435, 467 (Md. 2012). The foreclosure on Plaintiffs' property was docketed on September 1, 2015, and the sale was ratified on May 3, 2017. ECF No. 9 ¶ 10. Accordingly, to the extent Plaintiffs base their claim on Defendants' initiation of and participation in the foreclosure process, that claim was not filed within the one-year limitations period and is barred.[4] Indeed, the Amended Complaint does not contain any allegations concerning events taking place or statements being made after August 2017, much less within a year of filing this action. Accordingly, Plaintiffs' claim for slander of title will be dismissed.

### 4. Quiet Title

Plaintiffs next bring a claim titled "Quiet Title – Disgorgement of Mortgage Note." ECF No. 9 at 18. To the extent Plaintiffs seek to bring a quiet title action,[5] they "must show [their]

---

[4] Additionally, to the extent Plaintiffs alleges libel in Count VI, ECF No. 9 at 19, that claim is also barred, as libel claims, like claims for slander of title, are subject to a one-year limitations period, Md. Code Ann., Cts. & Jud. Proc. § 5-105. The Court notes that the allegations contained in Count VI, collected under the header "Other Relief," are unclear, and it is difficult to decipher on what facts Plaintiffs base their libel claim or whether they even intend to bring one. Nevertheless, because all of the events in the Amended Complaint take place in or prior to August 2017, Plaintiffs have not alleged any facts on which they could base a timely libel claim.

[5] The Court is not aware of a cause of action for "Disgorgement of Mortgage Note," and Plaintiffs do not provide any explanation clarifying this allegation.

claim to title and sufficiently allege an invalid or defective adverse interest." *Jones v. Bank of N.Y. Mellon*, No. DKC-13-3005, 2014 WL 3778685, at *3 (D. Md. July 29, 2014). Where, as here, Plaintiffs secured a loan with a deed of trust, legal title is transferred to the trustees. *Hall v. JPMorgan Chase Bank*, N.A., No. JKB-19-2510, 2020 WL 1452132, at *5 (D. Md. Mar. 25, 2020); *Harris v. Household Fin. Corp.*, No. RWT-14-606, 2014 WL 3571981, at *2 (D. Md. July 18, 2014). And where, as here, Plaintiffs have not repaid the loan, they have not "defeated [this conveyance of legal title] on the performance of a condition subsequent," *Hall*, 2020 WL 1452132, at *5 (quoting *Simard v. White*, 859 A.2d 168, 176 (Md. 2004)), and they cannot bring a claim to quiet title, *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 199–200 (4th Cir. 2014) (dismissing quiet title claim where the plaintiffs "do not, and cannot, plausibly allege that they own legal title to that property"); *Powell*, 2016 WL 5815884, at *7 (dismissing quiet title claim where the plaintiffs never alleged how they had title to the property, "whether because they have paid off the mortgage or by some other means"); *Siple v. First Franklin Fin. Corp.*, No. RDB-14-2841, 2015 WL 2374414, at *7 (D. Md. May 15, 2015) ("Where a debt remains outstanding, and the obligor presents no plausible reason for rescission of the mortgage, he does not have a claim of quiet title for which relief may be granted.").

**5. Presentment of the Note Under U.C.C. § 3-501**

Plaintiffs' claim for presentment of the note—consisting of a single sentence "demand[ing] that the holder of any 'Mortgage Promissory Note' referenced within the attached deeds and indentures [] present the cancelled instrument as required by law and the written contract," ECF No. 9 at 19 (emphasis in original)— fails to state a claim for relief. First, "because the U.C.C. is a model code, it has no legal effect in and of itself." *Hardie v. Deutsche Bank Tr. Co. Am.*, No. TDC-20-1135, 2021 WL 2458061, at *7 (D. Md. June 16, 2021).

However, the U.C.C. has been codified in Maryland. *See id.* (citing Md. Code Ann., Com. L. § 1-103; *Hartford Fire Ins. Co. v. Md. Nat'l Bank, NA.*, 341 Md. 408, 671 A.2d 22, 32 (1996)). The Court thus construes this claim as arising under the state law claim analog, which is identical to the U.C.C. provision. *See* Md. Code Ann., Com. Law § 3-501. Under section 3-501, "[u]pon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made." *Id.* § 3-501(b)(2). Here, however, Plaintiffs' bare allegations do not "explain[] how Defendants allegedly violated § 3-501 or connect[] that provision with any of the facts [they] set[] out." *Quattlebaum v. Bank of Am., N.A.*, No. TDC-14-2688, 2015 WL 1085707, at *7 (D. Md. Mar. 10, 2015). Accordingly, the claim will be dismissed.

### 6.  Equitable Tolling

To the extent Plaintiffs' claims fail because they are time-barred, Plaintiffs argue that the limitations periods should be equitably tolled due to the related criminal action, in which Mr. Hardie was a defendant. ECF No. 9 ¶ 31. According to Plaintiffs, Mr. Hardie could not file suit until "the dust had settled" in that criminal proceeding. *Id.* Plaintiffs further explain that Mr. Hardie "was entitled to prioritize his own right to remain silent, which necessarily attended the criminal defense strategy[.]" *Id.*

Because the Maryland statute of limitations applies, "the state's accompanying rule regarding equitable tolling should also apply." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999). "Maryland courts construe statutes of limitations strictly." *Touko v. United States*, No. GJH-20-1113, 2021 WL 2685328, at *4 (D. Md. June 29, 2021) (citing *Hecht v. Resol. Tr.*

*Corp.*, 635 A.2d 394, 399 (Md. 1994); *Booth Glass Co. v. Huntingfield Corp.*, 500 A.2d 641, 645 (Md. 1985)). Equitable tolling is allowed when "the plaintiff has been induced or tricked by the defendant's conduct into allowing the filing deadline to pass." *Adedje v. Westat, Inc.*, 75 A.3d 401, 408 (Md. Ct. Spec. App. 2013) (quoting *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 629 N.E.2d 520, 531 (Ill. 1993)). Maryland courts therefore allow equitable tolling only when the defendant "holds out an inducement not to file suit or indicates that limitations will not be plead[ed]." *Kumar v. Dhanda*, 17 A.3d 744, 754 (Md. 2011), *aff'd sub nom. Shailendra Kumar, P.A. v. Dhanda*, 43 A.3d 1029 (Md. 2012) (alteration in original) (quoting *Philip Morris v. Christensen*, 905 A.2d 340, 348 (Md. 2006)). Here, while Plaintiffs suggest that one of them, Mr. Hardie, was unable to timely file suit due to the ongoing criminal proceedings, Plaintiffs have not alleged that Defendants fraudulently prevented timely filing, so equitable tolling does not apply.

### B.  Federal Claims

In Counts II and VI, Plaintiffs bring various federal claims arising under the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and the Fair Debt Collection Practices Act ("FDCPA"). Like many of the claims brought under state law, those federal claims are time-barred.

### 1.  RESPA

Plaintiffs first allege that Defendants violated "RESPA (Regulation X)." ECF No. 9 at 13. Regulation X refers to RESPA's implementing regulations, codified at 12 C.F.R. §§ 1024.1 to 1024.41. *See* 12 C.F.R. § 1024.1. Plaintiffs do not clearly articulate how Defendants' actions violated RESPA or specify a particular RESPA section or regulation that they violated. Thus, they have thus failed to state a RESPA claim against Defendants. Moreover, any claim asserted

based on the facts in the Amended Complaint would be time-barred, as RESPA claims must be brought within either one or three years depending on the section violated. *See* 12 U.S.C. § 2614 (providing for a one-year statute of limitations for violations of section 2605 and a three-year period for violations of sections 2607 and 2608). The foreclosure sale was ratified on May 3, 2017, and the Amended Complaint does not contain allegations of events occurring after August 2017, but the suit was not brought until September 12, 2020. Plaintiffs' RESPA claims are therefore dismissed.

### 2. FDCPA

Plaintiffs allege two violations of the FDCPA. First, they allege Defendants violated section 1692d, ECF No. 9 ¶ 63, which prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[t]he use of or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person," 15 U.S.C. § 1692d(1)).[6] Second, Plaintiffs claim Defendants unlawfully failed to "**Verify and Validate** ownership and control of all Promissory Debt under the Mortgage Note and to Account for all Payments and Counterparty Guarantees under the FDCPA." ECF No. 9 at 19 (emphasis in original). Plaintiffs are thus assumed to be asserting a claim under section 1692g(b) of the FDCPA, which provides that when a "consumer notifies the debt collector in writing within [a] thirty-day period" after receiving a communication in connection with debt collection, the "debt collector shall cease collection of the debt" until a copy of the verification of the debt or a judgment "is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

---

[6] Although Plaintiffs cite section 1692e in the Amended Complaint, they quote section 1692d, ECF No. 9 ¶ 63, so the Court understands the citation to 1692e to be an error.

But FDCPA claims must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020). Because all of the events described in the Amended Complaint occurred in or before August 2017, while the action was not filed until September 12, 2020, Plaintiffs' FDCPA claims are dismissed as untimely.

### 3. TILA

Finally, Plaintiffs bring a claim under "TILA (Regulation Z)." ECF No. 9 at 14. Regulation Z refers to TILA's implementing regulations. *See* 12 C.F.R. § 226.1. "TILA requires specific disclosures by lenders when extending credit to consumers." *Sotipalalit v. JPMorgan Chase Bank, N.A.*, No. DKC 12-0481, 2012 WL 2050821, at *2 (D. Md. June 6, 2012). Although the Amended Complaint is difficult to parse, it appears that Plaintiffs allege that Defendants failed to provide the requisite disclosures related to sales of their mortgage account under 15 U.S.C. § 1641(g). *See* ECF No. 9 ¶ 60–61; *id.* at 19. Section 1641(g) generally requires creditors assuming home loans to provide notice to borrowers in writing of the transfer within 30 days. 15 U.S.C. § 1641(g).

Claims brought under § 1641(g) are subject to a one-year limitations period that begins to run after the 30-day window has closed. *See Michaud v. J.P. Morgan Chase Bank*, N.A., No. WDQ-12-0815, 2012 WL 1454859, at *2 (D. Md. Apr. 25, 2012) (citing 15 U.S.C. § 1640(e)). Although Plaintiffs do not identify with specificity a failure to properly disclose information under § 1641(g), because the foreclosure sale of Plaintiffs' property was ratified on May 3, 2017, a claim could not have arisen after that date, as Plaintiffs were no longer borrowers to whom Defendants had to provide notice of new creditors. *Cf. Sherk v. Countrywide Home Loans, Inc.*, No. CIV. A. 08-5969, 2009 WL 2412750, at *2 (E.D. Pa. Aug. 5, 2009) ("[P]laintiffs, who no

14

longer own the property after foreclosure, cannot bring a TILA claim."). In turn, because Plaintiffs did not file suit until September 12, 2020, any claim brought under § 1641(g) is necessarily time-barred.

Additionally, to the extent Plaintiffs assert claims under other sections of TILA, they would likewise be barred, as TILA claims are subject to a statute of limitations of either one or three years, depending on the provision violated. *See* 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought . . . within one year" except "[a]ny action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought . . . before the end of the 3-year period."); *see also* 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"). Again, because the foreclosure sale was ratified on May 3, 2017, and all of the alleged events in the Amended Complaint occurred in or before August 2017, Plaintiffs' claim is time-barred under either limitations period.

### 4. Equitable Tolling

Equitable tolling involves distinct analyses in state and federal law. Accordingly, while the Court has already determined that equitable tolling does not apply to Plaintiffs' state law claims, it will proceed to determine whether Plaintiffs' federal law claims may be equitably tolled based on Plaintiff Darrell Hardie's involvement in criminal proceedings related to the allegations here. ECF No. 9 ¶ 31.

Under federal tolling principles, "[p]laintiffs are entitled to equitable tolling only if they show that they have pursued their rights diligently <u>and</u> extraordinary circumstances prevented them from filing on time." *Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Equitable tolling is thus "reserved for 'those rare

instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Id.* (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). The use of equitable tolling must be "guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris*, 209 F.3d at 330.

The risk of self-incrimination from testimony in a concurrent civil suit is not a sufficient basis for equitable tolling. The Supreme Court has determined that where a plaintiff files claims "related to rulings that will likely be made in a pending or anticipated criminal trial," the "common practice [is] to stay the civil action until the criminal case or the likelihood of a criminal case ended." *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007). Other courts, citing *Wallace*, have thus found that the possibility of self-incrimination due to related ongoing criminal proceedings does not warrant equitable tolling in a civil action. *See, e.g.*, *Stoner v. Percell*, No. 3:13–CV–00762–CRS, 2014 WL 6611557, at * 5 (W.D. Ky. Nov. 20, 2014) (finding, albeit under Kentucky's equitable tolling principles, that "the potential for self-incrimination created by [the plaintiff's] criminal charges" did not toll the statute of limitations given the availability of a stay in the civil action and further noting "a criminal defendant is not absolved from all other responsibilities the law would otherwise place upon him, including compliance with an applicable statute of limitations"); *Carter v. Burgess*, No. CV-16-00770-TUC-DCB, 2018 WL 3957716, at *3 (D. Ariz. Aug. 17, 2018) (finding, under Arizona's equitable tolling principles, that "the pendency of Plaintiff's criminal prosecution did not toll the statute of limitations"). This Court agrees. Moreover, Plaintiffs do not explain when the criminal proceedings took place or address how the criminal proceedings involving Plaintiff Darrell

Hardie prevented Plaintiff Yanic Hardie from filing suit. Accordingly, the statutes of limitations applicable to Plaintiffs' federal claims will not be tolled, and the claims will be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' first Motion to Dismiss, ECF No. 8, is denied as moot, and Defendants' second Motion to Dismiss, ECF No. 10, is granted. A separate Order follows.


Date: <u>August 16, 2021</u>                                   ___/s/_____
                                                          GEORGE J. HAZEL
                                                          United States District Judge